**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MEGAN LEE GARZA,** | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 5:26-cv-5511** |
| **v.** | § | |
| **CITY OF SAN ANTONIO,** | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |
| | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Megan Lee Garza files this Original Complaint against Defendant City of San Antonio and respectfully shows the Court as follows:

## I. NATURE OF THE ACTION

1. This is an employment case. Plaintiff Megan Lee Garza worked for the City of San Antonio as a Chauffeur in the Senior Services Division of the Department of Human Services from October 10, 2022 until her termination on May 14, 2026. She is a lesbian woman who suffers from chronic migraine headaches — a condition her physician certified as a lifelong serious health condition and for which the City approved intermittent leave under the Family and Medical Leave Act.

2. Beginning in 2023, after Plaintiff objected internally to her department's removal of Pride decorations and to related conduct she reasonably believed was discrimination on the basis of sexual orientation, the City subjected her to a sustained campaign of discipline, surveillance, reassignment, and pretextual write-ups that culminated in her discharge.

3. The City also penalized Plaintiff for using FMLA leave. On at least two occasions — January 20, 2026 and March 12, 2026, the City assessed attendance points against Plaintiff for

FMLA-protected absences and told her the points were assessed because she was "taking advantage of FMLA." Those same attendance and performance issues were then recited in her termination papers.

4. The final sequence is telling. On April 8, 2026, the City pulled Plaintiff from driving duties, purportedly over a safety concern. On April 16, 2026, the City returned her to full driving duties and assigned her additional routes at a second center. On April 16 and April 20, 2026, Human Resources repeatedly pressed Plaintiff to resign in lieu of termination. On May 1, 2026, Plaintiff reported a sexual harassment incident and gave a written statement to Human Resources. Seven days later, on May 8, 2026, the City issued a proposed termination. The City then cut off the work email access it had promised her for submitting a contesting statement, and terminated her on May 14, 2026, one day earlier than the effective date stated in its own proposed termination notice.

5. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for retaliation, for retaliation based specifically on her report of sexual harassment and her participation in the investigation of that report, and for sex discrimination; and under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., for interference and retaliation. She seeks back pay, reinstatement or front pay, compensatory damages, liquidated damages, attorney's fees, costs, and interest.

## I. PARTIES

6. Plaintiff Megan Lee Garza is an individual residing in San Antonio, Bexar County, Texas. At all relevant times she was an "employee" within the meaning of 42 U.S.C. § 2000e(f) and an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

7. Defendant City of San Antonio is a Texas home-rule municipal corporation and a political subdivision of the State of Texas. It is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and a "public agency" and "employer" within the meaning of 29 U.S.C. § 2611(4)(A)(iii) and 29 U.S.C. § 203(x). Defendant employs more than 500 employees. Defendant may be served with process by serving its Mayor, Gina Ortiz Jones at City Hall, 100 Military Plaza, San Antonio, Texas 78205, and City Clerk, Debbie Recca Sittre at City Tower, 100 W. Houston St., Concourse, San Antonio, Texas 78205 or as otherwise permitted by Federal Rule of Civil Procedure 4(j)(2) and Texas Civil Practice and Remedies Code § 17.024(b).

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, and under 42 U.S.C. § 2000e-5(f)(3) and 29 U.S.C. § 2617(a)(2).

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any state-law claims Plaintiff may hereafter assert, as such claims form part of the same case or controversy.

10. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendant is located in this District, the unlawful employment practices alleged occurred in this District, and the employment records relevant to those practices are maintained and administered in this District. Venue is proper in the San Antonio Division because the events occurred in Bexar County, Texas.

## IV. CONDITIONS PRECEDENT AND ADMINISTRATIVE EXHAUSTION

11. On or about April 24, 2026, Plaintiff submitted an inquiry to the Equal Employment Opportunity Commission, San Antonio Field Office. Plaintiff attended an intake interview on May 12, 2026.

12. Plaintiff signed a Charge of Discrimination on May 19, 2026. The EEOC formalized and filed the charge on May 26, 2026 as Charge No. 451-2026-03726, alleging retaliation in violation of Title VII with respect to discipline and discharge. The charge was dual-filed with the Texas Workforce Commission Civil Rights Division, which deferred investigation on May 27, 2026.

13. On May 28, 2026, the EEOC issued a Determination and Notice of Rights dismissing the charge and notifying Plaintiff of her right to sue. This suit is filed within ninety (90) days of Plaintiff's receipt of that notice.

14. All conditions precedent to the filing of this suit have been performed or have occurred. The FMLA claims asserted herein require no administrative exhaustion.

15. The retaliation claims asserted in Counts One and Two are within the scope of Charge No. 451-2026-03726 and of the EEOC investigation that could reasonably be expected to grow out of it. The formalized charge particulars expressly state that Plaintiff "found it odd that Respondent allowed me to start working again regular duties and then only gave termination papers after I reported the sexual harassment statements." The charge thus placed both the EEOC and Defendant on notice that Plaintiff claimed her termination followed, and was caused by, her report of sexual harassment.

**Reservation and Anticipated Amendment**

16. Plaintiff has a second charge of discrimination pending before the Equal Employment Opportunity Commission and the Texas Workforce Commission Civil Rights Division alleging discrimination, harassment, and retaliation on the basis of disability, sexual orientation, complaints of sexual harassment, and requests for medical leave. Plaintiff has not yet received a notice of right to sue from the EEOC or a notice of right to file a civil action from the Texas Workforce Commission Civil Rights Division on that charge.

17. Charge No. 451-2026-03726 was dual-filed with the Texas Workforce Commission Civil Rights Division on May 26, 2026, and the Commission deferred investigation on May 27, 2026. Plaintiff has requested, or will request, a notice of right to file a civil action from the Commission pursuant to Texas Labor Code § 21.252.

18. Plaintiff files this Complaint at this time in order to preserve her federal claims within the ninety-day period prescribed by 42 U.S.C. § 2000e-5(f)(1). Plaintiff intends to seek leave to amend this Complaint, promptly upon receipt of the applicable notices, to add claims under Chapter 21 of the Texas Labor Code — including claims under §§ 21.051, 21.055, 21.106, 21.141, and 21.142 — and under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Those claims arise from the same transactions and occurrences pleaded herein, and this Court will have supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a). Plaintiff expressly reserves all such claims and does not waive them by omitting them from this pleading.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment

19. Plaintiff was hired by the City of San Antonio on October 10, 2022, as a Chauffeur (SAP Employee No. 153622) in the Senior Services Division of the Department of Human

Services. She holds a commercial driver's license and transported elderly members between their residences and City senior centers.

20. Plaintiff's direct supervisor was CJ White, Mobility Services Manager. Her chain of command at various times included Fernando Medellin (Senior Transportation Program), Juan Velasquez (Senior Center Manager), Debra Colorado (Transportation Fleet Supervisor), Victor Obevoen, Yolanda Perez (Senior Services Division Director), and Melody Woosley (Director, Department of Human Services). Human Resources personnel involved in the events below included Ariana Saenz, Alma Garza, Michelle Lingenfelder, and Lauren Davis. Scott Russell served as the City's EEO Administrator.

21. Plaintiff performed her job satisfactorily. She was cross-trained to cover front-desk duties, was entrusted with additional centers and routes, and for a period performed the workload of two chauffeur positions.

**B. Plaintiff's Protected Activity Regarding Sexual Orientation Discrimination**

22. In June 2023, Plaintiff witnessed a dispute among staff at the Walker Ranch Senior Center over whether Pride decorations should be displayed. On or about June 2, 2023, the center manager, Guadalupe Perez, removed the Pride decorations. Ms. Perez told Plaintiff and a coworker, more than once, words to the effect of: "Even though I don't fully agree with the lifestyle, I have to respect it."

23. On or about December 8, 2023, Plaintiff's holiday stocking was separated from the other employees' stockings, lowered, and thrown on the floor.

24. Plaintiff reported this conduct internally. The City's EEO Administrator, Scott Russell, responded. During that process, Mr. Russell accused Plaintiff and a female coworker of being in a

romantic relationship. Plaintiff told him the accusation was untrue and reported that his conduct made her uncomfortable. No corrective action resulted.

25. In June 2024, Plaintiff informed CJ White that she intended to decorate her assigned bus for Pride Month, as she had decorated it for other holidays and community events. Mr. White approved.

26. On or about June 6, 2024, Plaintiff arrived at work to find that her assigned City vehicle had been keyed and damaged. The vehicle was parked inside a badge-access-controlled yard, meaning the damage was done by someone with authorized access.

27. Rather than investigate the vandalism, the City directed Plaintiff to remove the decorations. On or about June 7, 2024, Mr. White required her to scrub the chalk from the vehicle in triple-digit heat. On or about June 8, 2024, after Yolanda Perez drove past the center to view the vehicle, Mr. White required Plaintiff to power-wash the vehicle again in the same heat. A male chauffeur assigned to the same center was not required to wash his vehicle.

28. On or about June 12, 2024, Plaintiff filed a written complaint at the City Clerk's office. The complaint was routed back to Scott Russell, the same EEO Administrator whose conduct Plaintiff had previously reported.

29. On or about June 13, 2024, the day after Plaintiff filed her complaint, Mr. White presented Plaintiff with an Employee Discussion Worksheet regarding "Decorating the outside of the city vehicle," citing Administrative Directive 1.8, City Vehicle Use. Administrative Directive 1.8 prohibits the application of decals to City vehicles. Plaintiff did not apply any decal; she used removable chalk.

30. On October 16, 2024, the City closed its investigation and informed Plaintiff by memorandum that her complaint was "unfounded."

**C. Escalating Adverse Treatment Following Plaintiff's Complaints**

31. On November 25, 2024, Victor Obevoen informed Plaintiff by email that she was being involuntarily transferred to the Doris Griffin Senior Center. Plaintiff objected, explained that the transfer tripled her commute and that she no longer wished to transfer, and asked whether she could instead cover the vacancy temporarily until the position was posted and filled. Mr. Obevoen refused and told her the transfer was permanent and not optional.

32. A male chauffeur, Michael Bailey, had been offered the same position at the same center and was permitted to decline it. Plaintiff was not given that option. Upon information and belief, the position at Doris Griffin Senior Center was never posted. Following the transfer, Plaintiff performed the duties of two chauffeur positions.

33. On April 14, 2025, Plaintiff took a late lunch from approximately 3:05 p.m. to 4:00 p.m. after working through her scheduled lunch period. On May 16, 2025, the City issued Plaintiff a five-day (40-hour) suspension for "neglect of duty and failure to follow instructions," citing Administrative Directive 1.75 (Fraud, Waste, and Abuse) and multiple subsections of Rule XVII, Section 2 of the Municipal Civil Service Rules. Melody Woosley advocated for termination. Plaintiff appealed. Following a hearing on or about July 29, 2025, the suspension was reduced to three days on the ground that a five-day suspension was excessive for a first offense.

34. On or about May 22, 2025, Plaintiff returned her "We Welcome All" equality badge to Victor Obevoen and told him she was not comfortable wearing it because the department did not practice what the badge represented. Mr. Obevoen laughed and responded, in substance, "umm… okay."

35. On July 2, 2025, at 5:31 p.m., after Plaintiff was off the clock, Debra Colorado sent Plaintiff an email accusing her of nearly ending a member's life in a "near miss" incident. Plaintiff

responded with a detailed account establishing that she had stopped the vehicle, that the member had crossed behind the bus rather than at the marked crosswalk, and that the bus's back-up alarm was not functioning. Ms. Colorado had not sought Plaintiff's account or reviewed available video before accusing her.

36. On or about July 10, 2025, Plaintiff again submitted a complaint to the City's EEO office regarding the pattern of write-ups directed at her.

37. In August 2025, another motorist attempted repeatedly to strike Plaintiff's bus and submitted a partial video clip of the encounter. Plaintiff's supervisor issued a write-up without obtaining the complete footage.

38. On or about February 2, 2026, after Plaintiff reported a duplicate entry in the senior statistics system, the City revoked her system credentials and questioned how she had obtained them. Other chauffeurs retained access to the same system.

39. On or about February 12, 2026, and February 26, 2026, Plaintiff received additional write-ups arising from a driver who cut her off and from a lane merge Plaintiff executed in compliance with Texas traffic law and the applicable Administrative Directive. In neither instance did the City obtain statements from the members on board.

40. On or about March 18, 2026, Plaintiff contacted Human Resources for guidance because she believed she was again being targeted. She was referred to Debra Colorado, who declined to meet with her for two weeks.

### D. Plaintiff's Serious Health Condition and FMLA Leave

41. Plaintiff suffers from chronic migraine headaches that cause episodic incapacity, including visual impairment that renders her unable to operate a commercial vehicle.

42. On or about January 8, 2025, FMLASource, the City's third-party FMLA administrator, received Plaintiff's request for leave for her own serious health condition (Leave Request No. 5348021). Plaintiff's treating physician certified the condition, identified it as a chronic health condition, indicated that the condition is lifelong, and certified a need for intermittent leave for flare-ups of up to approximately two absences per month lasting up to one day each.

43. Plaintiff submitted a renewed certification for the following leave year (Leave Request No. 5872134), covering an intermittent leave date range of January 2, 2026 through January 1, 2027.

44. Plaintiff was an eligible employee under 29 U.S.C. § 2611(2): she had been employed by Defendant for more than twelve months and had worked more than 1,250 hours in the twelve months preceding each request for leave. Defendant is a public agency and therefore an employer under the FMLA without regard to employee count.

45. Between January 2025 and April 2026, Plaintiff took intermittent FMLA leave for migraine episodes on numerous dates, including January 16, January 27, February 12, February 21, February 26, March 11, March 18, March 26, April 2, April 7, April 15, and April 16 of 2025; June 10, June 24, June 30, September 2, and October 20 of 2025; and January 5, January 6, January 20, February 10, February 11, March 3, March 10, March 12, April 14, and April 15 of 2026.

46. Defendant assessed attendance points against Plaintiff for FMLA-protected absences. On or about January 20, 2026, and again on or about March 12, 2026, Plaintiff was assessed attendance points for FMLA-qualifying migraine absences and was told the points were being assessed because she was "taking advantage of FMLA."

47. Attendance points are a component of the City's progressive discipline framework. By assessing points against FMLA-protected absences, Defendant used Plaintiff's exercise of her

FMLA rights as a negative factor in its employment decisions, including the decision to terminate her.

**E. Plaintiff's Sexual Harassment Report and Her Termination**

48. On April 8, 2026, the rear tire of Plaintiff's bus made contact with a curb while she was dropping off a member. No injury was reported to Plaintiff at the time. Upper management removed Plaintiff from driving duties for approximately one week.

49. On April 16, 2026, the City returned Plaintiff to full driving duties and additionally assigned her to assist another center with its trips and routes. Defendant's decision to restore and expand Plaintiff's driving assignments is inconsistent with its later characterization of her as a safety risk.

50. On April 16 and April 20, 2026, Human Resources personnel, including Ariana Saenz and Alma Garza, called Plaintiff into meetings, questioned her, and pressed her to resign rather than be terminated, suggesting the driving job was not suited to her. The April 20, 2026, meeting was held after the end of Plaintiff's contracted work hours. Ms. Saenz thereafter called Plaintiff daily, at times as often as three times per day, including while Plaintiff was driving field trips on the clock, to ask whether she had reconsidered resigning.

51. On April 24, 2026, Plaintiff submitted her inquiry to the EEOC.

52. On May 1, 2026, Natalie Ramos, the supervisor in charge at the center in Juan Velasquez's absence, witnessed an incident of sexual harassment involving Plaintiff. Ms. Ramos told Plaintiff that she intended to report the incident.

53. Plaintiff reported the incident to Defendant's Human Resources department. At Human Resources' request, Plaintiff prepared and submitted a written statement describing the conduct. Plaintiff thereafter cooperated with and participated in Defendant's internal review of that report.

54. Plaintiff reasonably and in good faith believed that the conduct she reported constituted sexual harassment prohibited by Title VII. Defendant's Human Resources department, its supervisors, and its management were aware of Plaintiff's report and of her written statement.

55. On May 8, 2026, seven days after Plaintiff's sexual harassment report, a Human Resources representative delivered to Plaintiff, on behalf of Melody Woosley, a Proposed Termination letter and placed her on paid administrative leave with a proposed termination effective date of May 15, 2026.

56. Human Resources advised Plaintiff that she could submit a written statement contesting the proposed termination to Ms. Woosley and that she would retain full access to her City email account while on paid administrative leave.

57. On May 11, 2026, when Plaintiff attempted to log in to her City email account to transmit her contesting statement, she received a message stating that her sign-in was successful but did not meet the criteria to access the resource. Plaintiff contacted CJ White, one of only two employees she was permitted to contact. Mr. White relayed an explanation that "a new system" might be "acting strange." No new system had been implemented during Plaintiff's employment. Plaintiff's access was never restored. Plaintiff was instructed to send her statement from her personal email address, which she did in order to meet the deadline.

58. On May 14, 2026, Plaintiff received a Final Termination Notice from Melody Woosley stating that her termination was effective immediately — one day before the effective date stated in the City's own proposed termination notice.

59. On May 18, 2026, Plaintiff asked CJ White to retrieve her personal belongings from City vehicles. Mr. White stated he would notify her when the items were available. He never did, and Plaintiff has not recovered her belongings.

60. Plaintiff timely appealed her termination to the Municipal Civil Service Commission. The Commission initially did not acknowledge Plaintiff's mailed appeal, and Plaintiff was required to re-send it by certified mail at her own expense on May 26, 2026, to avoid missing the ten-working-day deadline. On May 31, 2026, the Commission scheduled a hearing for July 8, 2026.

61. On June 22, 2026 at approximately 2:00 p.m., Plaintiff submitted her list of requested witnesses for the hearing. At approximately 4:28 p.m. the same day, Plaintiff received notice that the July 8, 2026 hearing was cancelled and postponed. The hearing was subsequently reset to August 14, 2026.

**F. Pretext**

62. Defendant's stated reasons for Plaintiff's discipline and discharge are pretextual. Among other things: (a) Defendant restored and expanded Plaintiff's driving duties on April 16, 2026, days after removing her over a purported safety concern; (b) Defendant issued discipline for conduct in which similarly situated employees engaged without consequence, including vehicle decoration, use of a personal phone while operating a City vehicle, and lane merges; (c) Defendant disciplined Plaintiff for a "near miss" without reviewing available video or obtaining her account, and while the vehicle's back-up alarm was inoperable; (d) Defendant counted FMLA-protected absences against Plaintiff and expressly attributed the resulting attendance points to her use of FMLA leave; (e) Defendant permitted a male comparator to decline the transfer it forced upon Plaintiff; (f) Defendant pressured Plaintiff to resign for weeks before generating the record supporting termination; (g) Defendant cut off the email access it had promised Plaintiff for the express purpose of contesting her termination; and (h) Defendant advanced the effective date of termination by one day, immediately after Plaintiff reported sexual harassment.

63. The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions is close and repeated: a written warning the day after her June 12, 2024, complaint; a proposed termination seven days after her May 1, 2026 sexual harassment report; and a final termination twenty days after she filed her EEOC inquiry.

## VI. CAUSES OF ACTION

### COUNT ONE

### Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a)

64. Plaintiff incorporates the preceding paragraphs by reference.

65. Plaintiff engaged in activity protected by the opposition clause of 42 U.S.C. § 2000e-3(a) by opposing conduct she reasonably and in good faith believed constituted discrimination on the basis of sex and sexual orientation, including through her internal reports in 2023, her written complaint filed with the City Clerk on or about June 12, 2024, her return of the "We Welcome All" badge on or about May 22, 2025 with an explanation of why she would not wear it, and her EEO submission on or about July 10, 2025.

66. Plaintiff also engaged in activity protected by the participation clause of 42 U.S.C. § 2000e-3(a) by submitting an inquiry to the Equal Employment Opportunity Commission on April 24, 2026, by attending an EEOC intake interview on May 12, 2026, and by signing and filing a Charge of Discrimination.

67. Defendant knew of each instance of protected activity.

68. Defendant subjected Plaintiff to materially adverse actions that would dissuade a reasonable worker from making or supporting a charge of discrimination, including written discipline, a five-day suspension reduced to three days, an involuntary transfer denied to a male

comparator, removal of system credentials, removal from driving duties, sustained pressure to resign, denial of the email access promised for contesting her termination, and discharge.

69. A causal connection exists between Plaintiff's protected activity and the adverse actions, as shown by close temporal proximity, the pattern of escalating discipline following each complaint, disparate treatment of comparators, and Defendant's shifting and unsupported justifications. Plaintiff received a written warning the day after her June 12, 2024 complaint, and she was terminated twenty days after submitting her EEOC inquiry.

70. But for Plaintiff's protected activity, Defendant would not have taken the adverse actions described above.

71. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, loss of future earning capacity, and emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

## COUNT TWO

### Retaliation for Reporting Sexual Harassment and for Participating in the Investigation of That Report — Title VII, 42 U.S.C. § 2000e-3(a)

72. Plaintiff incorporates the preceding paragraphs by reference. This Count is pleaded separately from Count One to make clear that Plaintiff asserts retaliation arising specifically from her May 1, 2026 report of sexual harassment and from her participation in Defendant's ensuing investigation of that report.

73. On or about May 1, 2026, Plaintiff reported sexual harassment to Defendant's Human Resources department, submitted a written statement describing the conduct at Human Resources' request, and thereafter cooperated with and participated in Defendant's internal review of that report.

74. In reporting the harassment, in submitting her written statement, and in participating in Defendant's investigation, Plaintiff opposed a practice made unlawful by Title VII within the meaning of 42 U.S.C. § 2000e-3(a). Plaintiff held a reasonable, good-faith belief that the conduct she reported constituted sexual harassment prohibited by Title VII. An employee who reports sexual harassment and who answers questions or provides a statement in an employer's internal investigation of that report engages in protected opposition. See EEOC v. Rite Way Serv., Inc., 819 F.3d 235 (5th Cir. 2016).

75. In the alternative, Plaintiff engaged in protected participation within the meaning of 42 U.S.C. § 2000e-3(a) by making and supporting a charge of discrimination and by assisting and participating in an investigation and proceeding under Title VII, including her April 24, 2026 EEOC inquiry, her May 12, 2026 intake interview, and her Charge of Discrimination — all of which encompassed her report of sexual harassment.

76. Defendant had actual knowledge of Plaintiff's report and of her written statement. The report was witnessed by a City supervisor, Natalie Ramos, and was made to and documented by Defendant's Human Resources department.

77. Defendant subjected Plaintiff to materially adverse actions because of that protected activity, including: issuing a Proposed Termination letter and placing her on administrative leave on May 8, 2026; terminating the work email access it had expressly promised her for the purpose of submitting a statement contesting the proposed termination; refusing to restore that access; and discharging her on May 14, 2026, one day before the effective date stated in Defendant's own proposed termination notice.

78. The causal connection is established by, among other things: (a) the seven-day interval between Plaintiff's May 1, 2026 report and the May 8, 2026 Proposed Termination; (b) Defendant's

decision on April 16, 2026 — two weeks before the report — to return Plaintiff to full driving duties and to assign her additional routes at a second center, which is inconsistent with its contemporaneous position that she posed a safety risk warranting discharge; (c) Defendant's revocation of the email access it had promised her for contesting the termination; (d) Defendant's advancement of the termination date; and (e) the pretextual nature of the reasons Defendant has given.

79. But for Plaintiff's report of sexual harassment and her participation in the investigation of that report, Defendant would not have proposed or effected her termination.

80. As a direct and proximate result, Plaintiff has suffered the damages described above.

**COUNT THREE**

**Sex Discrimination in Violation of Title VII, 42 U.S.C. § 2000e-2(a) and Hostile Environment Based on Sex**

81. Plaintiff incorporates the preceding paragraphs by reference.

82. Plaintiff is a member of a protected class. Discrimination on the basis of sexual orientation is discrimination "because of … sex" within the meaning of 42 U.S.C. § 2000e-2(a)(1). Bostock v. Clayton County, 590 U.S. 644 (2020).

83. Plaintiff was qualified for her position and performed it satisfactorily.

84. Defendant subjected Plaintiff to a hostile environment and adverse employment actions, including discipline, suspension, involuntary transfer, and discharge, because of her sex and sexual orientation.

85. Defendant treated similarly situated employees outside Plaintiff's protected class more favorably under nearly identical circumstances, including by permitting a male chauffeur to decline the transfer forced upon Plaintiff, by not requiring a male chauffeur at the same center to

wash his vehicle, and by not disciplining other chauffeurs for conduct for which Plaintiff was disciplined.

86. In the alternative, Defendant subjected Plaintiff to a hostile work environment based on sex and sexual orientation. The harassment was unwelcome, was based on Plaintiff's protected characteristic, and was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Defendant knew of the harassment through Plaintiff's repeated internal complaints and failed to take prompt and appropriate corrective action; indeed, its EEO Administrator compounded the harassment by accusing Plaintiff of a relationship with a female coworker, and the City closed its investigation as "unfounded."

87. As a direct and proximate result, Plaintiff has suffered the damages described above.

## COUNT FOUR

### Interference with FMLA Rights, 29 U.S.C. § 2615(a)(1)

88. Plaintiff incorporates the preceding paragraphs by reference.

89. Plaintiff was an eligible employee, Defendant was a covered employer, and Plaintiff was entitled to FMLA leave for her own serious health condition. Plaintiff gave proper notice of her need for leave and provided medical certification through Defendant's designated administrator.

90. Defendant interfered with, restrained, and denied the exercise of Plaintiff's FMLA rights by, among other things, assessing attendance points against her for FMLA-protected absences, telling her that those points were assessed because she was "taking advantage of FMLA," and using her FMLA-protected absences as a negative factor in disciplinary decisions and in the decision to terminate her employment. See 29 C.F.R. § 825.220(c).

91. Plaintiff was prejudiced by Defendant's interference. She lost her employment, wages, and benefits.

92. Defendant's violations were willful within the meaning of 29 U.S.C. § 2617(c)(2), and Defendant did not act in good faith or on reasonable grounds to believe its conduct complied with the FMLA.

**COUNT FIVE**

**Retaliation for Exercise of FMLA Rights, 29 U.S.C. § 2615(a)(2)**

93. Plaintiff incorporates the preceding paragraphs by reference.

94. Plaintiff engaged in activity protected by the FMLA by requesting and taking intermittent leave for a certified serious health condition.

95. Defendant subjected Plaintiff to adverse employment actions, including the assessment of attendance points, progressive discipline, and discharge.

96. A causal connection exists between Plaintiff's protected FMLA activity and the adverse actions. Plaintiff took FMLA leave on April 14 and April 15, 2026; she was issued a proposed termination on May 8, 2026 and terminated on May 14, 2026. Defendant expressly linked the discipline she received to her use of FMLA leave.

97. Defendant's stated reasons are pretextual, and Plaintiff's exercise of FMLA rights was a motivating and but-for cause of her termination.

98. As a direct and proximate result, Plaintiff has suffered lost wages, salary, employment benefits, and other compensation, and is entitled to liquidated damages, interest, equitable relief, attorney's fees, and costs under 29 U.S.C. § 2617.

## VII. DAMAGES

104. Plaintiff seeks all damages available under Title VII and the FMLA, including: back pay and lost benefits from May 14, 2026 to the date of judgment, with prejudgment interest; reinstatement or, in the alternative, front pay and lost future benefits; compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life; liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii); reasonable attorney's fees and expert fees under 42 U.S.C. § 2000e-5(k) and 29 U.S.C. § 2617(a)(3); costs of court; and post-judgment interest.

105. Plaintiff has mitigated and will continue to mitigate her damages.

## VIII. JURY DEMAND

106. Plaintiff demands a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b) and 42 U.S.C. § 1981a(c).

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Megan Lee Garza respectfully requests that the Court:

- Enter judgment that Defendant violated Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act;
- Award back pay, lost benefits, and prejudgment interest;
- Order reinstatement to her former position or, alternatively, award front pay and lost future benefits;
- Award compensatory damages in an amount to be determined by the jury;
- Award liquidated damages under 29 U.S.C. § 2617;
- Order Defendant to expunge from Plaintiff's personnel file the disciplinary actions and attendance points found to be unlawful;
- Award reasonable attorney's fees, expert fees, and costs of court;
- Award post-judgment interest; and

- Grant such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Road, Ste. 109**
**San Antonio, Texas 78229-3550**
**Telephone: (210) 212-7979**
**Facsimile: (210) 212-5880**

**BY: *_/s/ Adam Poncio_***
**ADAM PONCIO**
**STATE BAR NO. 16109800**
**aponcio@ponciolaw.com**
**ALAN BRAUN**
**STATE BAR NO. 24054488**
**abraun@ponciolaw.com**

**ATTORNEYS FOR PLAINTIFF**